**Mary Jane CANNON, Individually and as Personal Representative of the Estate of Henry T. Cannon, Deceased, Plaintiff-Appellee,**

v.

**Rosemary Cannon WADDELL, a/k/a Rosemary Hatcher Cannon, Defendant-Appellant.**

**No. 81CA0065.**

Colorado Court of Appeals,
Div. I.

Dec. 24, 1981.

Rehearing Denied Jan. 21, 1982.

Carlos F. Lucero, P. C., Alice M. Price, Alamosa, for plaintiff-appellee.

Gordon H. Rowe, Jr., Monte Vista, for defendant-appellant.

ENOCH, Chief Judge.

In an action to quiet title and for declaratory and injunctive relief, defendant, the first wife of the deceased, appeals a judgment in favor of decedent's estate, represented by decedent's second wife. We affirm in part and reverse in part.

The decedent and his first wife purchased a home as joint tenants with right of survivorship. They both signed the note and deed of trust, and the decedent executed a life insurance contract for the amount of the outstanding indebtedness naming himself as the insured, and the lender as beneficiary.

Decedent's marriage to the first wife was dissolved in 1976. Under the terms of the property settlement, the husband retained possession of the house, the couple was directed to convey the house to themselves as tenants in common, the husband was directed to make the payments on the note, and he was required to pay wife $840 representing ½ of the cash surrender value of their insurance policies. When the house was sold, the proceeds were to be divided equally after the husband was reimbursed for principal, interest, taxes, and insurance payments made for the benefit of the wife's ½ interest.

The couple did not execute the documents conveying the house into a tenancy in common, and both individuals were later married to others. After the husband's death, the proceeds of the mortgage life insurance policy were paid to the lender, and the first wife, who was still a joint tenant as a matter of record, claimed to be the sole owner by virtue of survivorship. The second wife, who had possession of the house, claimed that the first wife owned only a ½ interest in the house as tenant in common with the estate, and acknowledged that the first wife was entitled to some rental for being deprived of the use of the home by a fellow tenant.

Holding that the joint tenancy was severed by the dissolution decree, thus creating a tenancy in common, the trial court entered judgment in favor of the estate, and the second wife. The court further found that the estate, upon sale of the house, was entitled to be reimbursed for, among other things, ½ of the principal paid prior to the husband's death and for the full amount of the insurance proceeds applied to principal after the husband's death. We agree that the joint tenancy was severed, but reverse

the trial court's disposition of the insurance proceeds.

■ *Bradley v. Mann*, 34 Colo.App. 135, 525 P.2d 492 (1974), *aff'd*, 188 Colo. 392, 535 P.2d 213 (1975), is dispositive of the first wife's contention that the house remained in joint tenancy despite the decree of dissolution. We are not persuaded by the first wife's efforts to distinguish *Mann*. The passage of two years between dissolution and death is not particularly probative of the parties' desire to leave the property in joint tenancy; such delay may be as easily explained by simple neglect. Moreover, the situation here presents an even stronger case than *Mann* did for finding a severance. Here, in contrast to the decree in *Mann*, this decree of dissolution, drafted and agreed to by the parties, expressly stated the parties' intent to create a tenancy in common.

Therefore, we hold that the first wife and the husband's estate were tenants in common, and we reject the first wife's argument that she is the sole owner.

The first wife's alternative argument is that the trial court's declaration of the parties' financial interest in the property was incorrect. We agree.

■ The terms of the dissolution decree determined the interest of the parties in the property. The sole issue in this case is the construction to be given the dissolution decree. Because the trial court heard no testimony respecting the meaning of the decree and based its decision on the words of the document itself, we may reach our own conclusion as to the meaning of the document. *See Radiology Professional Corp. v. Trinidad Area Health Ass'n*, 195 Colo. 253, 577 P.2d 748 (1977).

Two provisions in the dissolution decree are relevant here. The first provision required the husband to pay the first wife "$840 cash ... representing ½ of the cash value of insurance policies." The second provision specified that "the parties [were] to divide the net proceeds of the sale of the home, when sold, equally subject to a repayment to [husband] of all principal, interest,

taxes and insurance payments made thereon ... on [first wife's] ½ interest ...."

The house was valued at $45,000, and the trial court ruled that upon sale the amount received should be divided as follows: The estate would receive $5,403.19, representing ½ the principal, interest, taxes, and homeowner's insurance premiums paid by the husband during his lifetime, an additional $32,219.55, representing 100% of the mortgage insurance proceeds paid on principal after the husband died, and $113.10, representing miscellaneous expenses incurred by the estate, which are not at issue here. The first wife was to receive $1,773.20, representing payments of taxes and rental for the period the second wife occupied the house after the husband's death. After payment of these amounts, the balance, if any, was to be divided equally between the estate and the first wife. We find two errors in this disposition.

■ Initially, the estate should not have received credit for 100% of the mortgage insurance proceeds because, contrary to the trial court's findings, the husband was not the sole owner of the insurance. The $840 payment made by the husband under the original dissolution decree divested the first wife of any interest she had in only those policies which had a cash surrender value, such as one life insurance policy which the record shows to have a substantial cash surrender value. In addition to car insurance, there were two other policies which had no cash surrender value: the homeowner policy and the mortgage policy.

The status of these policies, which both relate to preservation of the property, is determined by another part of the decree which specifically provided that the husband would be reimbursed for payment of all principal, interest, taxes, and "insurance payments" made on the first wife's interest in the property. Under this provision, the estate should receive credit for ½ the mortgage insurance premiums paid, just as it received credit for ½ the homeowner's insurance premiums paid. If there had been a claim under the homeowner's policy, the tenants in common would have shared equally in the proceeds of that policy, and similarly, those obligated on the mortgage should also share equally in the mortgage insurance proceeds. The net effect of the payment of the mortgage insurance proceeds to the loan company is that the estate and the first wife own the property free and clear of the mortgage, and there should be no reimbursement between the parties based on the proceeds of this insurance.

■ The second error in the trial court's determination of the parties' financial interest in the property was the formula used. The trial court first deducted the amount of each party's credit from the sale proceeds, and then divided the net proceeds equally. The trial court should have divided the gross proceeds equally, and then adjusted each share to reflect the credit to be given for payments of principal, etc. *See Martinez v. Martinez*, Colo.App., 638 P.2d 834 (1981).

Therefore, upon sale of the house, the proceeds after payment of sale costs including commission, if any, should be divided in half. The estate's share should be increased, and the first wife's share decreased, by ½ of the principal, interest, taxes, homeowner's insurance premiums, mortgage insurance premiums, and miscellaneous expenses paid by the husband and the estate. The first wife's share should be increased and the estate's share decreased by the amount of credit to which the wife is entitled, and as previously indicated, the first wife's share should not be decreased by any amount on account of the mortgage insurance proceeds.

That part of the judgment holding that the property was owned by Rosemary Cannon Waddell and the estate of Henry T. Cannon as tenants in common is affirmed. That part of the judgment determining the parties' financial interest in the property is reversed, and the cause is remanded for redetermination of the financial interest of the parties in accordance with this opinion.

STERNBERG and TURSI, JJ., concur.